UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELIQUE MOORE AND ERIC MOORE <br> 1518 Butler Street, SE, Apt. No. 204 <br> Washington, DC 20020, <br><br> PLAINTIFFS, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br> Office of the Attorney General <br> 441 4th Street, NW <br> Washington, DC 20001 <br><br> DC METROPOLITAN POLICE DEPARTMENT <br> OFFICERS JOHN ALTAR, MICHAEL <br> CALLAHAN, JEREMY SHARPTON, "OFFICER <br> DOSSEN," AND "OFFICER COLE" <br> 300 Indiana Ave., NW, Room 4115 <br> Washington, DC 20001 <br><br> DEFENDANTS. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. _____

Case: 1:12-cv-00490
Assigned To : Howell, Beryl A.
Assign. Date : 3/29/2012
Description: Civil Rights - Non. Employ.

Served to (handwritten annotation next to DISTRICT OF COLUMBIA)

## COMPLAINT

Plaintiffs Angelique Moore and Eric Moore (collectively, "the Moores" or "Plaintiffs"), by and through their attorneys, for their Complaint against the District of Columbia and DC Metropolitan Police Department Officers Altar, Callahan, Dossen, Sharpton, and Cole, allege as follows:

### JURISDICTION

1.    The Plaintiffs bring this action to redress the deprivation of rights secured to them by the United States Constitution, as made actionable under 42 U.S.C. § 1983, and additional rights secured to them by the law of the District of Columbia.

2.      This Court has jurisdiction over the parties and subject matter in this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.      Venue is proper under 28 U.S.C. § 1391(b) because all of the acts or omissions giving rise to this action occurred in the District of Columbia.

## PARTIES

4.      Plaintiffs Angelique and Eric Moore are individuals residing in the District of Columbia at 1518 Butler Street, SE, Apt. No. 204 Washington, DC 20020.

5.      Defendant District of Columbia is a municipal corporation empowered to sue and be sued, and the local government for the territory constituting the permanent seat of the federal government of the United States.  The District of Columbia is responsible for, *inter alia*, the operation of the DC Metropolitan Police Department as an agency of the local government.

6.      At all times relevant to this Complaint, Defendants Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole were employed by the DC Metropolitan Police Department.  At all times relevant to this Complaint, Defendants Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole were employees acting under color of law within the scope of their employment at the DC Metropolitan Police Department.  Each defendant is sued in his individual capacity.

## FACTUAL BACKGROUND

7.      During the late evening of April 1, 2011, Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole executed a search warrant at the Kutt 'N Upp Barbershop, located at 1433 Good Hope Road, SE, Washington, DC ("the Barbershop").  The officers wore either DC Metropolitan Police Department uniforms or apparel identifying them to be members of the

Narcotics and Special Investigations Unit for the DC Metropolitan Police Department, and had their firearms visible to the public.

8.       A private residence occupied by friends of the Moores was located immediately adjacent to the Barbershop at 1431 Good Hope Road, SE, Washington, DC ("the Friend's Residence").

9.       After completing their search of the Barbershop, several of the defendant officers, including Lieutenant Altar, exited the premises and encountered Eric Moore riding a bicycle along the public sidewalk in front of the Barbershop and immediately adjacent to the Friend's Residence.

10.      As Mr. Moore passed the Barbershop, a police officer (later identified as Lieutenant Altar) stood in Mr. Moore's path.  Mr. Moore changed course to ride safely around Lieutenant Altar and to avoid making contact with the officer.

11.      Lieutenant Altar told Mr. Moore to watch where he was going.  Mr. Moore responded by noting that Lieutenant Altar saw him riding on the sidewalk, moved into Mr. Moore's path, and could have moved out of the way.

12.      Lieutenant Altar then approached Mr. Moore, deliberately bumped Mr. Moore with his shoulder, and knocked a baseball cap off of Mr. Moore's head.

13.      When Mr. Moore protested that Lieutenant Altar had no right to touch him, Lieutenant Altar responded that he could do whatever he wanted and then threatened to impound Mr. Moore's bicycle at the Seventh District police station if Mr. Moore continued to speak.

14.     When Mr. Moore continued to protest, Lieutenant Altar abruptly snatched the bicycle from Mr. Moore and threw it onto the lawn of the Friend's Residence.  Lieutenant Altar then walked back to, and entered, the Barbershop.

15.     Mr. Moore then picked up his bicycle and sat on a small retaining wall in front of the Friend's Residence.

16.     Distressed by Lieutenant Altar's conduct, Mr. Moore immediately called his mother, Angelique Moore, on a cell phone to report what had occurred.  After a brief discussion, Mr. Moore approached Lieutenant Altar with the cell phone and asked Lieutenant Altar to speak with Ms. Moore.  Lieutenant Altar refused.

17.     In response to her son's call and Lieutenant Altar's refusal to discuss the situation on the cell phone, Ms. Moore walked from her home to the scene.

18.     When she arrived on the scene about ten to fifteen minutes later, Ms. Moore respectfully approached Lieutenant Altar to discuss the treatment of her son, who was again sitting on the small retaining wall in front of the Friend's Residence.  Mr. Moore had done nothing wrong and was not in police custody at the time.

19.     While Ms. Moore was discussing the situation with Lieutenant Altar, another officer, believed to be Officer Callahan, came out of the Barbershop and inexplicably confronted Mr. Moore in an invasive and threatening manner.

20.     In a voice that was audible only to Mr. Moore and Officer Callahan, Officer Callahan made homosexual overtures and comments to Mr. Moore, including harassing comments about how Officer Callahan would like to have sexual relations with Mr. Moore and how individuals in prison would also like to have sexual relations with him.

4

21.    Upset by these comments, Mr. Moore yelled at Officer Callahan, telling him to get away and to leave Mr. Moore alone.  Mr. Moore also made it clear that he had no interest in Officer Callahan's sexual advances.

22.    Despite the distressing nature of the comments, Mr. Moore never threatened Officer Callahan in any fashion.  Mr. Moore merely demanded that Officer Callahan leave him alone.

23.    Seeing that Officer Callahan was harassing Mr. Moore, Ms. Moore asked Lieutenant Altar for assistance in restraining his colleague.  On information and belief, Lieutenant Altar had the authority to restrain Officer Callahan as a subordinate officer. Nevertheless, Lieutenant Altar refused to do so, claiming merely that Officer Callahan was "his own man."  Like Lieutenant Altar, none of the other officers made any effort to restrain Officer Callahan.

24.    At or about that time, Ms. Moore asked Lieutenant Altar to provide his DC Metropolitan Police Department badge number.  Lieutenant Altar refused this request, stating that he had no badge number.  When Ms. Moore responded that all police officers have badge numbers, Lieutenant Altar simply ignored her request and continued to withhold his badge number.

25.    Ms. Moore then asked Lieutenant Altar to provide the DC Metropolitan Police Department badge number for Officer Callahan.  Lieutenant Altar refused this request as well, stating that Officer Callahan's information could not be given out.

26.    After standing in uncomfortably close proximity to Mr. Moore for some period of time, Officer Callahan finally stopped harassing Mr. Moore and walked away.

27.     Still upset by Officer Callahan's comments, Mr. Moore cursed at Officer Callahan and continued to protest his sexual advances.  At no time, however, did Mr. Moore threaten to do bodily harm to Officer Callahan or any other officer at the scene.

28.     The other officers on the scene, believed to include Officers Cole, Dossen, and Sharpton, just stood there.  None of the officers told Mr. Moore to be quiet.  None of the officers told Mr. Moore that he would be arrested if he continued yelling.

29.     Ms. Moore tried to calm Mr. Moore down by talking to him.  The Moores walked up the stairs to a concrete landing in the front yard of the Friend's Residence to have a private conversation away from the police officers.

30.     While standing on the concrete landing, Ms. Moore had her back to the police officers and was standing directly in front of Mr. Moore.

31.     While the Moores were talking, Mr. Moore saw an unidentified police officer, believed to be either Officer Sharpton or Dossen, give a hand signal to Officer Callahan.

32.     Without warning, Officer Callahan then charged the Moores and tackled them both to the concrete.

33.     Ms. Moore, who was struck from behind, took the brunt of the attack as Officer Callahan landed on top of her body, causing her multiple injuries.  In pain, Ms. Moore broke into tears and pleaded with Officer Callahan to get off of her.  Officer Callahan's shoulder was firmly lodged against Ms. Moore's jaw and his weight prevented her from moving while she lay prone on the concrete.

34.    Another officer at the scene, believed to be Officer Sharpton or Dossen, ran over to assist Officer Callahan.  The two officers then handcuffed Mr. Moore and lifted him off of the ground.  The officers searched Mr. Moore, took everything out of his pockets, and removed the shoelaces from his shoes.  When asked why Mr. Moore was being arrested, the officers simply replied that he was being charged with disorderly conduct.

35.    Ms. Moore was left to lie on the concrete for some time before receiving assistance to stand.  Upon reaching her feet, Ms. Moore was still distraught and crying as the result of her physical injuries and the emotional shock of the attack.  Nevertheless, the officers merely dismissed her complaints of pain and failed to seek any medical assistance for Ms. Moore.

36.    At or about that time, Ms. Moore asked a third officer (believed to be Officer Cole) to provide his DC Metropolitan Police Department badge number.  The third officer refused to provide this information, responding that Ms. Moore did not "need" his badge number.

37.    Ms. Moore later went to the hospital where it was determined that she had suffered injuries to her hand, wrist, shoulder, and back due to Officer Callahan's attack.  Ms. Moore has also suffered emotional injury and distress due to Officer Callahan's attack.

38.    As a result of her injuries, Ms. Moore was unable to perform her regular job functions and was relegated to restricted "light duty" work at her place of employment.

39.    Although at the scene the officers indicated that Mr. Moore was being arrested for disorderly conduct, the charge was later inexplicably changed to a charge of threats to do bodily harm against two of the officers – Officer Callahan and Officer Sharpton.  Mr. Moore was

incarcerated overnight and then released on his own recognizance, subject to a deferred prosecution agreement.

40.     Although the sole charge of "threats to do bodily harm" was ultimately dropped, Mr. Moore remains saddled with a wrongful arrest record and suffers from all the indignities and disadvantages attendant therewith.

41.     In addition to being unlawfully incarcerated, Mr. Moore also suffered emotional injury and distress while observing the unprovoked attack on his mother by Officer Callahan.

**FIRST CLAIM FOR RELIEF**
**(FOR VIOLATION OF ERIC MOORE'S**
**4TH AMENDMENT RIGHTS, 42 U.S.C. § 1983)**
**(AGAINST ALL DEFENDANT OFFICERS)**

42.     Plaintiffs incorporate by reference ¶¶ 1 through 41 as if set forth fully herein.

43.     At the time Mr. Moore was arrested on April 1, 2001, he had the Constitutional right, pursuant to the 4th Amendment to the United States Constitution, to be secure from state actions which result in unlawful searches, seizures, and arrests without probable cause.

44.     At all times relevant to this Complaint, Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole were state actors acting under the color of law, custom, or usage of the District of Columbia, and on behalf of and in the interests of, their employer the District of Columbia.

45.     Officer Callahan and the other arresting officer (believed to be either Officer Dossen or Sharpton) searched Mr. Moore's person, seized his belongings, and arrested him without probable cause to believe that Mr. Moore had committed or was about to commit a crime.

46.     Officer Callahan and the other arresting officer (believed to be either Officer Dossen or Sharpton) had no good faith or reasonable belief that probable cause existed to search or arrest Mr. Moore.

47.     The other officers at the scene knew or had reason to know that a Constitutional violation was being committed by their fellow officers, had a reasonable opportunity to prevent the unlawful search and arrest, and nonetheless failed to protect Mr. Moore and his Constitutional rights.

48.     Collectively, Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole's respective actions or omissions in unlawfully arresting Mr. Moore or failing to protect Mr. Moore's Constitutional rights from the unlawful conduct of fellow officers wrongfully deprived Mr. Moore of his right to be free of unlawful searches, seizures, and arrests.

**SECOND CLAIM FOR RELIEF**
**(FOR VIOLATION OF ERIC MOORE'S**
**4TH AMENDMENT RIGHTS, 42 U.S.C. § 1983)**
**(AGAINST THE DISTRICT OF COLUMBIA)**

49.     Plaintiffs incorporate by reference ¶¶ 1 through 48 as if set forth fully herein.

50.     At the time Mr. Moore was arrested on April 1, 2001, he had the Constitutional right, pursuant to the 4th Amendment to the United States Constitution, to be secure from state actions which result in unlawful searches, seizures, and arrests without probable cause.

51.     Defendant District of Columbia had a duty to properly hire, train, supervise, and fire if necessary, its employees in order to protect the public against reasonable dangers which would be likely to occur in the absence of proper hiring, training, supervision, and firing.

52.     **Failure to Train – Unlawful Search and Arrest**.  The District of Columbia has a policy, custom, or practice of failing to effectively train, supervise, discipline, and control the people it employs as police officers regarding the need for probable cause when searching or arresting citizens.

53.     Defendant District of Columbia violated its duty to properly hire, train, supervise, and fire/suspend the police officers involved in this incident.

54.     The District of Columbia's negligent hiring and failure to train, supervise, fire or suspend the officers involved in this incident, and the unlawful search and arrest of Mr. Moore, were state actions (and inactions) that subjected Mr. Moore to an unlawful search and arrest without probable cause in violation of the 4th Amendment.

55.     The District of Columbia is liable directly, and pursuant to the doctrine of respondeat superior, for the violations of Mr. Moore's Constitutional rights.

**THIRD CLAIM FOR RELIEF**
**(FOR VIOLATION OF ERIC MOORE'S**
**14TH AMENDMENT RIGHTS, 42 U.S.C. § 1983)**
**(AGAINST ALL DEFENDANT OFFICERS)**

56.     Plaintiffs incorporate by reference ¶¶ 1 through 55 as if set forth fully herein.

57.     At the time Mr. Moore was arrested on April 1, 2001, he had the Constitutional right, pursuant to the 14th Amendment to the United States Constitution, to be secure from state actions which result in the deprivation of liberty without due process (including, the right to be free of a wrongful arrest record).

58.     At all times relevant to this Complaint, Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole were state actors acting under the color of law, custom, or usage of

the District of Columbia, and on behalf of and in the interests of, their employer the District of Columbia.

59.     Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole's respective actions or omissions in unlawfully arresting Mr. Moore or failing to protect Mr. Moore and his Constitutional rights from the unlawful conduct of fellow officers wrongfully deprived Mr. Moore of his liberty without due process of law, including the right to be free of a wrongful arrest record.

**FOURTH CLAIM FOR RELIEF**
**(FOR VIOLATION OF ERIC MOORE'S**
**14TH AMENDMENT RIGHTS, 42 U.S.C. § 1983)**
**(AGAINST THE DISTRICT OF COLUMBIA)**

60.     Plaintiffs incorporate by reference ¶¶ 1 through 59 as if set forth fully herein.

61.     At the time Mr. Moore was arrested on April 1, 2001, he had the Constitutional right, pursuant to the 14th Amendment to the United States Constitution, to be secure from state actions which result in the deprivation of liberty without due process (including, the right to be free of a wrongful arrest record).

62.     The District of Columbia's actions in incarcerating Mr. Moore illegally and without justification deprived Mr. Moore of his liberty without due process of law.

63.     Defendant District of Columbia also had a duty to properly hire, train, supervise, and fire if necessary, its employees in order to protect the public against reasonable dangers which would be likely to occur in the absence of proper hiring, training, supervision, and firing.

64.     **Failure to Train – Discriminatory Behavior**.  The District of Columbia has a policy, custom, or practice of failing to effectively train, supervise, discipline, and control the

11

people it employs as police officers regarding the appropriate, non-discriminatory treatment of the citizens of the District of Columbia.

65.     **Failure to Train – Use of Force**.  The District of Columbia has a policy, custom, or practice of failing to effectively train, supervise, discipline, and control the people it employs as police officers regarding the appropriate use of force against citizens.

66.     Defendant District of Columbia violated its duty to properly hire, train, supervise, and fire/suspend the police officers involved in this incident.

67.     The District of Columbia's negligent hiring and failure to train, supervise, fire or suspend the officers involved in this incident, and Mr. Moore's arrest and incarceration, were state actions (and inactions) that resulted in the deprivation of Mr. Moore's liberty protected under the 14th Amendment, including his right to be free of a wrongful arrest record.

68.     The District of Columbia is liable directly, and pursuant to the doctrine of respondeat superior, for the violations of Mr. Moore's Constitutional rights.

**FIFTH CLAIM FOR RELIEF**
**(FOR VIOLATION OF ANGELIQUE MOORE'S**
**14TH AMENDMENT RIGHTS, 42 U.S.C. § 1983)**
**(AGAINST ALL DEFENDANT OFFICERS)**

69.     Plaintiffs incorporate by reference ¶¶ 1 through 68 as if set forth fully herein.

70.     At the time of the incident on April 1, 2001, Ms. Moore had the Constitutional right, pursuant to the 14th Amendment to the United States Constitution, to be secure from state actions which result in the deprivation of liberty without due process, including the right to be free of unlawful touching and physical restraint.

71.     At all times relevant to this Complaint, Lieutenant Altar and Officers Callahan, Dossen, Sharpton, and Cole were state actors acting under the color of law, custom, or usage of the District of Columbia, and on behalf of and in the interests of, their employer the District of Columbia.

72.     Officer Callahan unlawfully charged, tackled, and restrained Ms. Moore without just cause.

73.     The other officers at the scene knew or had reason to know that a Constitutional violation was being committed by their fellow officer, had a reasonable opportunity to prevent the violation, and nonetheless failed to protect Ms. Moore and her Constitutional rights.

74.     Collectively, Officers Callahan's actions in unlawfully charging, tackling, and restraining Ms. Moore, and the other officers' failures to protect Ms. Moore and her Constitutional rights from the unlawful conduct of Officer Callahan, wrongfully deprived Ms. Moore of her liberty without due process of law, including the right to be free of unlawful touching and physical restraint.

### SIXTH CLAIM FOR RELIEF
### (FOR VIOLATION OF ANGELIQUE MOORE'S
### 14TH AMENDMENT RIGHTS, 42 U.S.C. § 1983)
### (AGAINST THE DISTRICT OF COLUMBIA)

75.     Plaintiffs incorporate by reference ¶¶ 1 through 74 as if set forth fully herein.

76.     At the time of the incident on April 1, 2001, Ms. Moore had the Constitutional right, pursuant to the 14th Amendment to the United States Constitution, to be secure from state actions which result in the deprivation of liberty without due process, including the right to be free of unlawful touching and physical restraint.

77.     Defendant District of Columbia also had a duty to properly hire, train, supervise, and fire if necessary, its employees in order to protect the public against reasonable dangers which would be likely to occur in the absence of proper hiring, training, supervision, and firing.

78.     **Failure to Train – Discriminatory Behavior**.  The District of Columbia has a policy, custom, or practice of failing to effectively train, supervise, discipline, and control the people it employs as police officers regarding the appropriate, non-discriminatory treatment of the citizens of the District of Columbia.

79.     **Failure to Train – Use of Force**.  The District of Columbia has a policy, custom, or practice of failing to effectively train, supervise, discipline, and control the people it employs as police officers regarding the appropriate use of force against citizens.

80.     Defendant District of Columbia violated its duty to properly hire, train, supervise, and fire/suspend the police officers involved in this incident.

81.     The District of Columbia's negligent hiring and failure to train, supervise, fire or suspend the officers involved in this incident, and the tackling and physical restraint of Ms. Moore, were state actions (and inactions) that resulted in the deprivation of Ms. Moore's liberty protected under the 14th Amendment, including her right to be free of unlawful touching and physical restraint.

82.     The District of Columbia is liable directly, and pursuant to the doctrine of respondeat superior, for the violations of Ms. Moore's Constitutional rights.

### SEVENTH CLAIM FOR RELIEF
### (FOR THE ASSAULT OF ERIC MOORE)
### (AGAINST THE DISTRICT OF COLUMBIA AND LIEUTENANT ALTAR)

83.     Plaintiffs incorporate by reference ¶¶ 1 through 82 as if set forth fully herein.

84.     As described above, Lieutenant Altar intentionally threatened or attempted to commit harmful and offensive contact with Mr. Moore.  In particular, Lieutenant Altar intended to make harmful and offensive contact to Mr. Moore when he approached Mr. Moore, swung his shoulder toward Mr. Moore, reached to knock the baseball cap off of Mr. Moore's head, and reached to snatch the bicycle out of Mr. Moore's hands.

85.     Through his conduct, Lieutenant Altar caused Mr. Moore to reasonably apprehend that he would be subjected to imminent harmful or offensive contact, and that Lieutenant Altar had the clear present ability to carry out the expected harmful or offensive contact.

86.     Lieutenant Altar's actions constitute assault in violation of the common law of the District of Columbia.

87.     At all times relevant to this Complaint, Lieutenant Altar was acting under the color of law, custom, or usage of the District of Columbia.

88.     At all times relevant to this Complaint, Lieutenant Altar committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

89.     The District of Columbia is liable for the actions taken by Lieutenant Altar in assaulting Mr. Moore pursuant to the doctrine of respondeat superior.

## EIGHTH CLAIM FOR RELIEF
## (FOR THE BATTERY OF ERIC MOORE)
## (AGAINST THE DISTRICT OF COLUMBIA AND LIEUTENANT ALTAR)

90.     Plaintiffs incorporate by reference ¶¶ 1 through 89 as if set forth fully herein.

91.     As described above, Lieutenant Altar intentionally battered Mr. Moore by bumping Mr. Moore with his shoulder, knocking the baseball cap off of Mr. Moore's head, and snatching the bicycle out of Mr. Moore's hands.

92.     Lieutenant Altar's actions constitute battery in violation of the common law of the District of Columbia.

93.     At all times relevant to this Complaint, Lieutenant Altar was acting under the color of law, custom, or usage of the District of Columbia.

94.     At all times relevant to this Complaint, Lieutenant Altar committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

95.     The District of Columbia is liable for the actions taken by Lieutenant Altar in battering Mr. Moore pursuant to the doctrine of respondeat superior.

## NINTH CLAIM FOR RELIEF
### (FOR THE ASSAULT OF ERIC MOORE)
### (AGAINST DISTRICT OF COLUMBIA AND OFFICER CALLAHAN)

96.     Plaintiffs incorporate by reference ¶¶ 1 through 95 as if set forth fully herein.

97.     As described above, Officer Callahan intentionally threatened or attempted to commit harmful and offensive contact with Mr. Moore.  In particular, Officer Callahan intended to make harmful and offensive contact to Mr. Moore when he approached Mr. Moore, stood in extremely close proximity to Mr. Moore, made offensive sexual overtures and comments to Mr. Moore, and refused to move away despite Mr. Moore's repeated requests for him to do so. Additionally, Officer Callahan intended to make harmful and offensive contact to Mr. Moore

when he charged Mr. Moore without just cause with the intention of tackling Mr. Moore to the concrete.

98.     Through his conduct, Officer Callahan caused Mr. Moore to reasonably apprehend that he would be subjected to imminent harmful or offensive contact, and that Officer Callahan had the clear present ability to carry out the expected harmful or offensive contact.

99.     Officer Callahan's actions constitute assault in violation of the common law of the District of Columbia.

100.    At all times relevant to this Complaint, Officer Callahan was acting under the color of law, custom, or usage of the District of Columbia.

101.    At all times relevant to this Complaint, Officer Callahan committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

102.    The District of Columbia is liable for the actions taken by Officer Callahan in assaulting Mr. Moore pursuant to the doctrine of respondeat superior.

**TENTH CLAIM FOR RELIEF**
**(FOR THE BATTERY OF ERIC MOORE)**
**(AGAINST THE DISTRICT OF COLUMBIA AND OFFICER CALLAHAN)**

103.    Plaintiffs incorporate by reference ¶¶ 1 through 102 as if set forth fully herein.

104.    As described above, Officer Callahan intentionally battered Mr. Moore by striking him and knocking him to the ground without just cause.

105.    Officer Callahan's actions constitute battery in violation of the common law of the District of Columbia.

106.    At all times relevant to this Complaint, Officer Callahan was acting under the color of law, custom, or usage of the District of Columbia.

107.    At all times relevant to this Complaint, Officer Callahan committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

108.    The District of Columbia is liable for the actions taken by Officer Callahan in battering Mr. Moore pursuant to the doctrine of respondeat superior.

## ELEVENTH CLAIM FOR RELIEF
## (FOR THE FALSE ARREST OF ERIC MOORE)
## (AGAINST THE DISTRICT OF COLUMBIA, OFFICER CALLAHAN, OFFICER SHARPTON, AND OFFICER DOSSEN)

109.    Plaintiffs incorporate by reference ¶¶ 1 through 108 as if set forth fully herein.

110.    At the time of the incident, neither Officer Callahan, Officer Sharpton, Officer Dossen nor any other member of the DC Metropolitan Police Department had probable cause to arrest Mr. Moore.

111.    The arrest and defaming of Mr. Moore was against his will and was done without legal justification for the arrest, and caused Mr. Moore mental suffering including shame and mortification from the indignity that resulted from the false arrest.

112.    At all times relevant to this Complaint, Officer Callahan, Officer Sharpton, and Officer Dossen were acting under the color of law, custom, or usage of the District of Columbia.

113.    At all times relevant to this Complaint, Officer Callahan, Officer Sharpton, and Officer Dossen committed their unlawful conduct while acting as police officers employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, their employer the District of Columbia.

114.    The District of Columbia is liable for the false arrest of Mr. Moore pursuant to the doctrine of respondeat superior.

## TWELFTH CLAIM FOR RELIEF
## (FOR THE FALSE IMPRISONMENT OF ERIC MOORE)
## (AGAINST THE DISTRICT OF COLUMBIA, OFFICER CALLAHAN,
## OFFICER SHARPTON, AND OFFICER DOSSEN)

115.    Plaintiffs incorporate by reference ¶¶ 1 through 114 as if set forth fully herein.

116.    After his arrest, Officer Callahan, personally or through others, caused Mr. Moore to be illegally held and imprisoned against his will overnight at the District of Columbia Jail, causing him mental suffering, including shame and mortification from the indignity and disgrace resulting from the false arrest and false imprisonment.  Neither Officer Callahan, Officer Sharpton, Officer Dossen nor any other member of the DC Metropolitan Police Department had probable cause to arrest Mr. Moore.

117.    At all times relevant to this Complaint, Officer Callahan, Officer Sharpton, and Officer Dossen were acting under the color of law, custom, or usage of the District of Columbia.

118.    At all times relevant to this Complaint, Officer Callahan, Officer Sharpton, and Officer Dossen committed their unlawful conduct while acting as police officers employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, their employer the District of Columbia.

119.     The District of Columbia is liable directly and pursuant to the doctrine of respondeat superior for the false imprisonment of Mr. Moore.

## THIRTEENTH CLAIM FOR RELIEF
## (FOR THE NEGLIGENT INFLICTION OF EMOTIONAL
## DISTRESS SUFFERED BY ERIC MOORE)
## (AGAINST THE DISTRICT OF COLUMBIA AND OFFICER CALLAHAN)

120.     Plaintiffs incorporate by reference ¶¶ 1 through 119 as if set forth fully herein.

121.     The actions taken by Officer Callahan complained of herein were extreme and outrageous and done carelessly with reckless disregard for safety, while Mr. Moore was in the immediate zone of physical danger.

122.     As a result of Officer Callahan's extreme and outrageous actions, Mr. Moore has suffered mental and emotional distress related to the events he witnessed, including Officer Callahan's unlawful tackling of his mother, Ms. Moore, in the process of tackling Mr. Moore.

123.     At all times relevant to this Complaint, Officer Callahan was acting under the color of law, custom, or usage of the District of Columbia.

124.     At all times relevant to this Complaint, Officer Callahan committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

125.     The District of Columbia is liable pursuant to the doctrine of respondeat superior for the negligent infliction of emotional distress of Mr. Moore.

## FOURTEENTH CLAIM FOR RELIEF
## (COMMON LAW NEGLIGENCE IN HIRING, TRAINING, SUPERVISION AND
## RETENTION LEADING TO THE MISTREATMENT OF ERIC MOORE)
## (DISTRICT OF COLUMBIA AND LIEUTENANT ALTAR)

126.    Plaintiffs incorporate by reference ¶¶ 1 through 125 as if set forth fully herein.

127.    Defendant District of Columbia had a duty to properly hire, train, supervise, and fire if necessary, its employees in order to protect the public against reasonable dangers which would be likely to occur in absence of proper hiring, training, supervision, and firing. Lieutenant Altar also had a duty to properly supervise and control the officers which, based on information and belief, were under his command at the time of the incident.

128.    **Failure to Train – Discriminatory Behavior.** The District of Columbia has failed to effectively train, supervise, discipline, and control the people it employs as police officers regarding the appropriate, non-discriminatory treatment of the citizens of the District of Columbia.

129.    **Failure to Train – Use of Force.** The District of Columbia has failed to effectively train, supervise, discipline, and control the people it employs as police officers regarding the appropriate use of force against citizens. As described above, Lieutenant Altar also failed to effectively supervise and control the other officers under his command with respect to the use of force against Mr. Moore at the time of the incident.

130.    **Failure to Train – Unlawful Search and Arrest.** The District of Columbia has failed to effectively train, supervise, discipline, and control the people it employs as police officers regarding the need for probable cause when searching or arresting citizens. As described above, Lieutenant Altar also failed to effectively supervise and control the other officers under his command regarding the need for probable cause before searching and arresting Mr. Moore.

131.    Defendant District of Columbia violated its duty to properly hire, train, supervise, and fire/suspend the police officers involved in this incident.

132.    As a result, Mr. Moore was assaulted, battered, unlawfully arrested, and forced to suffer all of the indignities and injuries described in this Complaint.

## FIFTEENTH CLAIM FOR RELIEF
## (FOR THE BATTERY ON ANGELIQUE MOORE)
## (AGAINST THE DISTRICT OF COLUMBIA AND OFFICER CALLAHAN)

133.    Plaintiffs incorporate by reference ¶¶ 1 through 132 as if set forth fully herein.

134.    As described above, Officer Callahan intentionally battered Ms. Moore when he charged the Moores, struck Ms. Moore, and knocked her to the ground, causing the injuries described in this Complaint.

135.    Officer Callahan's actions constitute battery in violation of the common law of the District of Columbia.

136.    At all times relevant to this Complaint, Officer Callahan was acting under the color of law, custom, or usage of the District of Columbia.

137.    At all times relevant to this Complaint, Officer Callahan committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

138.    The District of Columbia is liable for the actions taken by Officer Callahan in battering Ms. Moore pursuant to the doctrine of respondeat superior.

## SIXTEENTH CLAIM FOR RELIEF
## (FOR NEGLIGENCE REGARDING ANGELIQUE MOORE)
## (AGAINST THE DISTRICT OF COLUMBIA AND OFFICER CALLAHAN)

139.    Plaintiffs incorporate by reference ¶¶ 1 through 138 as if set forth fully herein.

140.    Even assuming that Officer Callahan had a right to arrest Mr. Moore on April 1, 2011, Officer Callahan had a duty to exercise at least ordinary care and to use the minimal amount of force necessary to accomplish his mission in arresting Mr. Moore.

141.    Officer Callahan breached his duty to exercise ordinary care when he carelessly tackled Ms. Moore to the ground, landing on top of her body, using excessive, unnecessary, and gratuitous force.

142.    As a result of Officer Callahan's failure to use ordinary care and minimum amount of force necessary to accomplish his mission, Ms. Moore sustained the injuries described in this Complaint.

143.    The District of Columbia is liable for the actions taken by Officer Callahan pursuant to the doctrine of respondeat superior.

## SEVENTEENTH CLAIM FOR RELIEF
### (FOR THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SUFFERED BY ANGELIQUE MOORE)
### (AGAINST THE DISTRICT OF COLUMBIA AND OFFICER CALLAHAN)

144.    Plaintiffs incorporate by reference ¶¶ 1 through 143 as if set forth fully herein.

145.    The actions taken by Officer Callahan complained of herein were extreme and outrageous and done carelessly with reckless disregard for safety, while Ms. Moore was in the immediate zone of physical danger.

146.    As a result of Officer Callahan's extreme and outrageous actions, Ms. Moore has suffered mental and emotional distress related to the events she witnessed, including Officer Callahan's wrongful restraint and arrest of her son, Mr. Moore.

147.    At all times relevant to this Complaint, Officer Callahan was acting under the color of law, custom, or usage of the District of Columbia.

148.    At all times relevant to this Complaint, Officer Callahan committed this unlawful conduct while acting as a police officer employed by the DC Metropolitan Police Department, and acting on behalf of, and in the interests of, his employer the District of Columbia.

149.    The District of Columbia is liable pursuant to the doctrine of respondeat superior for the negligent infliction of emotional distress of Mr. Moore.

**EIGHTEENTH CLAIM FOR RELIEF**
**(FOR COMMON LAW NEGLIGENCE IN HIRING, TRAINING, SUPERVISION AND**
**RETENTION LEADING TO THE MISTREATMENT OF ANGELIQUE MOORE)**
**(AGAINST THE DISTRICT OF COLUMBIA AND LIEUTENANT ALTAR)**

150.    Plaintiffs incorporate by reference ¶¶ 1 through 149 as if set forth fully herein.

151.    Defendant District of Columbia had a duty to properly hire, train, supervise, and fire if necessary, its employees in order to protect the public against reasonable dangers which would be likely to occur in absence of proper hiring training, supervision, and firing. Lieutenant Altar also had a duty to properly supervise and control the officers which, based on information and belief, were under his command at the time of the incident.

152.    **Failure to Train – Discriminatory Behavior**. The District of Columbia has failed to effectively train, supervise, discipline, and control the people it employs as police officers regarding the appropriate, non-discriminatory treatment of the citizens of the District of Columbia.

153.    **Failure to Train – Use of Force**. The District of Columbia has failed to effectively train, supervise, discipline, and control the people it employs as police officers

regarding the appropriate use of force against citizens. As described above, Lieutenant Altar also failed to effectively supervise and control the other officers under his command with respect to the use of force against Ms. Moore at the time of the incident.

154. **Failure to Train – Medical**. The District of Columbia has failed to effectively train, supervise, discipline, and control the people it employs as police officers with regards to providing timely medical attention to citizens known to be injured as a result of their actions. As described above, Lieutenant Altar also failed to effectively supervise and control the other officers under his command to ensure that they provided medical attention to Ms. Moore at the time of the incident.

155. Defendant District of Columbia violated its duty to properly hire, train, supervise, and fire or suspend the police officers involved in this incident.

156. As a result, Ms. Moore was assaulted, battered, and forced to suffer all of the indignities and injuries described in this Complaint.

## DEMAND

**WHEREFORE**, Plaintiffs Angelique and Eric Moore request that this Court enter judgment in their favor on all the abovementioned claims for relief, and against all Defendants, joint and severally, for compensatory damages in the total amount of $ 2 million dollars and punitive damages in the total amount of $ 2 million dollars, plus interest, costs, and attorney fees.

Plaintiffs also request any other additional and further relief that the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all of the facts, issues, and counts raised in this complaint.

Dated:  March 29, 2012

Respectfully Submitted,

By: _____

Jason D. Wallach (Bar No. 456154)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Phone: (202) 420-2668
Facsimile: (202) 379-9209

Omid Safa (Bar No. 999261)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Phone: (202) 420-3472
Facsimile: (202) 379-9343

*Attorneys for Eric and Angelique Moore*